J. T. WATSON ET AL. v. P. H. LUKINS.

ERROR TO THE COURT OF COMMON PLEAS OF MCKEAN COUNTY.

Argued May 7, 1889—Decided May 27, 1889.

1. In an action against the makers of certain notes, the plea being non-assumpsit, the plaintiff's testimony tended to establish that the names of the makers were placed to the notes by their business manager, by whom the notes were delivered to plaintiffs for a consideration passing to the makers. The defendants denying the plaintiff's case, the sole question, whether of authority or ratification, was one of fact which was properly submitted to the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 93 July Term 1888, Sup. Ct.; court below, No. 385 June Term 1879, C. P.

On April 17, 1879, an action in assumpsit was begun by P. H. Lukins against J. T. Watson and W. S. Raydure, trading as Watson & Raydure, on three certain promissory notes, each for $500, dated November 21, 1877, and payable to plaintiffs in 6 and 9 months and one year, respectively, and purporting to have been made by the defendant firm. The notes were the same in form. On the back of each note was the following guarantee:

"For value rec'd I do hereby guarantee payment of the within note to P. H. Lukins. Nov. 21, 1877.

(Signed) H. A. Jamieson."

The plea was non-assumpsit.

At a second trial of the case, on January 19, 1887, the plaintiff introduced testimony to the effect that Watson & Raydure had procured from a Mrs. Crull a lease of a farm for oil purposes; that when the lease was procured Watson & Raydure had made an agreement with Lukins, the plaintiff, who was a brother of Mrs. Crull, in consideration for his services in assisting to procure it, to give him one fourth of the profits from it, after all expenses of operating had been paid; that R. A. Watson procured from Lukins an assignment of this agreement and interest, and in consideration thereof gave him the notes in controversy and another note of $1,000; that R. A. Watson was the manager and agent of the defendants, and either had authority to sign these notes, or, his act in so doing was subsequently ratified by the defendants, who had received the benefit of the assignment of the agreement.

When the plaintiff offered the notes in evidence, the offer was objected to, on the ground that no sufficient evidence either of agency or ratification had been adduced.

By the court: We are not prepared to take this case from the jury at present, and we will admit the notes and consider the question in the disposition of the case.[5]

At the conclusion of the case on the evidence, the court, WILLIAMS, P. J., 4th judicial district, charged the jury in part as follows:

This action is brought to recover the amount of three notes given in 1877, bearing the firm name of Watson & Raydure, given to Mr. Lukins. It is conceded on all hands that

the firm name of Watson & Raydure was written on these notes by R. A. Watson. The plaintiff alleges that these notes were given by R. A. Watson as agent; that they were within his authority as such agent, and that they were given as a part of the consideration for the purchase of property for his principals which he had power to purchase. They allege also that these principals, after the purchase was consummated and the notes given, ratified and affirmed the act of their agent. The defendants deny that R. A. Watson was their agent. They deny that he had authority to purchase, or did in fact purchase for them, anything for which he could properly give these notes, and they deny that they have ever done an act affirming or ratifying this use of their name by R. A. Watson.

Upon this statement of the situation of the case, we will instruct you upon the legal questions which have been raised, and then try to get your attention upon the question of fact which we think is for you.

\*     \*     \*.     \*     \*     \*     \*     \*

The defendants ask us to charge:

6. The evidence does not show that the interest of the plaintiff in the said lease was transferred by him to the firm composed of J. T. Watson and W. S. Raydure, or that the said firm ever received any benefit from said transfer, and their verdict should be for the defendants.

Answer: The evidence does not satisfactorily show whose names were inserted in the assignment by Lukins. There is some controversy and contradiction over this point. If the jury should find that the assignment was not made to the persons composing this firm, that R. A. Watson was the real purchaser instead of J. T. Watson, then the law would be as stated in this point.[8]

7. That on all the evidence the verdict of the jury should be for the defendants.

· Answer: That we cannot say. We leave that to you.[9]

Now gentlemen, what remains of this case will be very briefly brought to your attention. You will have seen, by what we have said in your hearing, that these notes executed in the firm name of Watson & Raydure, by R. A. Watson, must have been ·executed by one having authority, to bind Watson & Raydure in the transaction out of which it is alleged the notes

grew, or his act must have been ratified afterwards. As there is no evidence tending to show authority from the persons composing the firm of Watson & Raydure to make this purchase, in advance of its being made, the only question is, was the act of R. A. Watson ratified by these parties afterwards? The question is one upon which there is very little evidence, and the jury should dispose of this question upon that which relates to it. It is said on the one hand that Lukins parted with an interest in a well worth the amount which it was sold at, in this arrangement with R. A. Watson; and, on the other hand, it is alleged that the property was yet in debt to the working interest of the firm of Watson & Raydure. How this is exactly, we are not able to say, and the jury may not be able satisfactorily to determine, nor is it necessary they should.

The question we want to get your attention on, and the only one we think there is for you to determine, is, have the members of this firm, the defendants in this case, ratified the act of R. A. Watson in giving these notes; and what is there bearing upon that subject? As to Raydure, the defendant who is here and has testified, there is the testimony of Mr. Lukins and Mr. Jamieson. [Lukins says that he negotiated the sale of his one fourth interest with R. A. Watson, after having gone to Raydure and spoken to him on the subject and having been directed by him to R. A. Watson for that purpose, and that he then made the bargain with Watson who agreed to pay him $2,500,—$1,000 down and $1,500 in notes to mature at intervals in the following year. Mr. Jamieson says that on the day when this transfer was made, Raydure and R. A. Watson were at his store together; that something was said about this transfer, and that Raydure said to him that the notes would be paid; that it was an entirely safe thing for him to do, to guarantee their payment. He said that he replied that he had rather have the property, the interest, turned out and delivered to him, and that he agreed to meet Raydure and Watson that day on the ground and have the property turned out to him —the one fourth interest.][1]

[Now gentlemen, if Raydure directed, when applied to by Lukins in reference to that lease, if he directed him to go and negotiate with R. A. Watson; if he afterwards assured Jamieson that the notes that had been given in the firm name of

Watson & Raydure, knowing they had been given, were good, and would be paid, this would be, as it seems to us so far as he is concerned, competent and probably satisfactory evidence on the subject of ratification.].[2]

Mr. Raydure himself, however, takes the witness stand, and makes an explanation of these circumstances which we ought to bring to your attention. He says that he was never applied to by Lukins in reference to the sale of his interest, but that he understood, from things said in his hearing and done in his presence, that R. A. Watson had become the purchaser of Lukins' interest, and that it was with that idea and understanding that he said and did what he did in reference to the delivery of possession. This question the jury will have to determine. If they should believe that Raydure honestly understood this to be a transaction between Watson and Lukins, in which he himself had no interest; that he was merely aiding another in the transaction; and, if the jury should believe that he had no knowledge of the fact that the notes had been given in the name of the firm of which he was a member, but that he was acting on the assumption that it was a transaction entirely between R. A. Watson and Lukins, then the force of this testimony would be very greatly shaken and the jury would be justified in regarding Raydure as not having intelligently and with knowledge of the circumstances done any act that would amount to a ratification of the purchase by R. A. Watson and the delivery of these notes.

Now, how stands the evidence as to the other defendant? The evidence in reference to J. T. Watson is still less. It relates almost entirely to the giving of the mortgage by him. The evidence shows that he gave a mortgage to Raydure, the other defendant, for the purpose of having it negotiated, and that it was subsequently negotiated with Messrs. Struthers and others, of Warren, and that among other debts paid by it the note of one thousand dollars, given by R. A. Watson to Lukins, was paid. [Now if J. T. Watson gave that mortgage for the payment of these notes knowing the destination of the money, then the payment of that note was a payment by him as truly as though he had paid it from his own pocket. If he paid that note it would not be unreasonable to infer that he had some knowledge of the transaction and that he was will-

ing to be bound by it. It is an inference that we think the jury would be justified in making.] [6] On the other hand, it is alleged by the other defendant, Raydure, that Adams Davis was an indorser upon several pieces of paper, this among them, given by R. A. Watson; that he was uneasy and pressing for security, and that some of these claims were in the hands of Mr. Johnson and Mr. Brown for collection, and that Mr. Struthers also had a claim against Watson & Raydure, and that a meeting was held between these parties, and it was understood and agreed that a mortgage should be given for this amount in order to pay the only claim outstanding by Watson & Raydure, which was held by Struthers, and the notes upon which Davis was indorser, in relief of Davis. Mr. Raydure says that he did not know himself that this $1,000 note grew out of this transaction; that it was not a note signed in the firm name as he understood it. His recollection is not like that of some of the other witnesses.

[Now, in reference to the effect of this mortgage and the giving of it, we desire to repeat that if the jury should feel justified in coming to the conclusion that J. T. Watson, knowing of the outstanding note of $1,000 and with the purpose to secure the payment, gave this mortgage and had the money raised and paid this portion of the purchase money of this property, it is evidence from which a ratification might be inferred.] [7] If, on the other hand, this mortgage was only given by one who was pressed by indorsers and others interested, and given for the purpose of insuring and indemnifying them against loss, and without knowledge of the fact that this note grew out of the alleged purchase for them of this interest, or that that interest had been transferred to them, and this represented a portion of the purchase money, then it would have very little weight as to the question of ratification; it would not be sufficient to justify you, if the jury should take that view of it, in finding that J. T. Watson had ratified the giving of these notes.

\*     \*     \*     \*     \*     \*     \*     \*

It is suggested to us that we have located the conversation between Mr. Jamieson and Mr. Raydure on the day when it is alleged these notes were given. If we have it is a mistake; Mr. Jamieson locates it on the day following that. [We stated

the effect of this conversation too strongly. Mr. Raydure, as appears by the testimony of the stenographer just read, did not send Mr. Lukins to Watson to see about the sale of his interest, but to see about the settlement of his account, so far as the production already had from the wells was concerned. His interest appears to have been one fourth of what should be left after the original cost of sinking these wells was reimbursed, and the question which he appears to have been investigating and about which he was sent to Mr. Watson was, whether there was anything due him from the proceeds of these wells above the amount expended in putting them in condition to produce the oil. So far, therefore, as anything said in reference to this subject in connection with the subject of ratification is concerned, the jury will understand us as now instructing them that this conversation does not throw any light upon that subject. The question of ratification depends upon what is alleged to have transpired with Mr. Jamieson in his store, and on the ground and in connection with Watson.] [3]

The jury returned a verdict in favor of the plaintiff for $2,256.99. A rule for a new trial was subsequently argued before OLMSTED, P. J., and discharged. Thereupon the defendants took this writ, assigning as error:

1–3. The portions of the charge included in [ ] [1 to 3]

5. The admission of plaintiff's offer. [5]

6, 7. The portions of the charge included in [ ] [6 7]

8, 9. The answers to the defendants' points. [8 9]

*Mr. Byron D. Hamlin* and *Mr. M. F. Elliott*, for the plaintiffs in error.

*Mr. D. I. Ball*, for the defendant in error.

PER CURIAM:

This case does not require discussion. It involved a question of fact, which was submitted to the jury with proper instructions by the learned judge who tried the cause below. There was abundant evidence of the ratification by Watson & Raydure of the act of R. A. Watson in purchasing Mr. Lukins' interest. It would serve no good purpose to review the numerous assignments of error in detail.

Judgment affirmed.